IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOLID WASTE SERVICES, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| NEW YORK MARINE & GENERAL | : | |
| INSURANCE CO., | : | NO. 13-1525 |
| Defendant. | : | |

## MEMORANDUM

PRATTER, J.                                                          DECEMBER 10, 2013

Cross-Motions for Judgment on the Pleadings filed by Plaintiff Solid Waste Services,

Inc., d/b/a J.P. Mascaro & Sons ("Mascaro") and Defendant New York Marine & General

Insurance Company ("NY Marine") present insurance policy contract interpretation issues for

resolution. For the following reasons, NY Marine's Motion is granted in part and denied in part,

and Mascaro's Motion is denied.

## I.      FACTUAL BACKGROUND

The parties have a dispute concerning the interpretation of an insurance policy.  During

the relevant period Mascaro, an employer in the solid waste industry, was approved for self-

insurance for up to $1 million per claim under the Pennsylvania Workers' Compensation Act, 77

P.S. 1, *et seq*. NY Marine issued a Specific Excess & Aggregate Excess Workers Compensation

and Employers Liability Indemnity Policy, policy number MW100048 ("the Policy"), to

Mascaro for the period from April 30, 2008, to April 30, 2009. The Policy provided up to $25

million in excess coverage above the $1 million per claim self-insured retention amount.  The

Policy also provided NY Marine with certain subrogation rights in the event there was a

successful recovery of damages from any third party.

1

Specifically, the relevant section of the insurance contract states:

L. Recovery from Others

The Company [NY Marine] has the Insured's [Mascaro's] rights, and the rights of persons entitled to compensation benefits from the Insured, to recover the Company's indemnity from anyone liable for the bodily injury covered by this Policy. The Insured will do everything necessary to protect those rights for the Company and to help the Company enforce them. *The recovered amounts remaining, after deducting the Company's recovery expenses, will first be used to reduce the Company's loss. Then the Company will pay the balance, if any, to the Insured.*

(Compl., Ex. A at 8) (emphasis added.) Section B of the Policy is also relevant to the issue before the Court, and it states "The Insured must retain loss [of $1,000,000]."[1] (*Id.* at 6.)

In September 2008, Mascaro's employee Keenan Chisolm suffered a catastrophic work-related injury, which was covered under the PWCA.  By January 2009, Mascaro had paid out $1 million in benefits to Mr. Chisolm, and began to submit all remaining pay-outs for reimbursement to NY Marine. Over the course of four years, NY Marine has reimbursed Mascaro more than $2 million for the Chisolm benefits.[2]

Mascaro also assisted Mr. Chisolm in pursuing claims against several third parties, including Conshohocken Steel.  In January 2013, Mr. Chisolm settled his claim against Conshohocken Steel for approximately $6,550,000. Under the PWCA, a portion of Mr. Chisolm's recovery is subject to a lien based on the amount of workers' compensation benefits

[1]	The original text of section B reads, "[t]he Insured must retain loss as shown in Declarations Item 7." (*Id.*) Declarations Item 7 states that Insured's specific retention is $1,000,000. (*Id.* at 1.) Accordingly, when section B is read in conjunction with Declaration Item 7, it states that the Insured must retain loss of $1,000,000.

[2]	 NY Marine claims that it has reimbursed Mascaro for $2,128,124.90. (Answer to Compl. ¶16.) Mascaro asserts that NY Marine has only reimbursed it in the amount of $2,069,078.00. (Compl. ¶16.) The arithmetical discrepancy is unrelated to the contract language dispute addressed here.

he already received, less a proportional share of the costs and expenses incurred by Mr. Chisolm in obtaining the recovery. *See* 77 P.S. § 671. After Mr. Chisolm settled with Conshohocken Steel, counsel for Mr. Chisolm notified counsel for Mascaro that he was depositing the worker's compensation lien in the amount of $1,560,701.38 in escrow.[3] (*See* Compl., Ex. C.; Counterclaims ¶ 27.)

Following Mr. Chisolm's settlement with Conshohocken Steel, on January 17, 2013, counsel for Mascaro sent a letter to NY Marine and to counsel for Mr. Chisolm, asserting that Mascaro was entitled to a portion of the $1,560,701.38 workers' compensation lien.[4] (Countercl. at Ex. B.) On February 18, 2013, NY Marine sent a letter to Mascaro asserting that Mascaro has no right under the Policy to any portion of the $1,560,701.38 workers' compensation lien. Subsequently, Mascaro filed the Complaint in this action with the Court of Common Pleas of Montgomery County asserting one count of breach of contract and requesting declaratory relief to the effect that Mascaro is entitled to $634,482 of the workers' compensation lien. (Compl. ¶44.) On March 22, 2013, NY Marine removed Mascaro's Complaint to this Court, and on March 27, 2013, NY Marine filed Counterclaims. Count I of NY Marine's Counterclaims seeks a declaration that it is entitled to the full amount of the escrowed $1,560,701.38 workers' compensation lien. Count II of NY Marine's Counterclaims requests that the Court order Mascaro to reimburse NY Marine for all amounts that NY Marine paid under the Policy if

---

[3]    NY Marine states that the full amount that was subject to the workers' compensation lien and available for compensation was approximately $1,900,000. However, both parties admit that the amount of the workers' compensation lien was reduced by an agreement (although Mascaro contends that it did not agree to the reduction; a relevant factual dispute which will be discussed below.) Accordingly, both parties agree that $1,560,701.38 is the amount of the lien actually recovered from Mr. Chisolm's settlement with Conshohocken Steel.

[4]    In the January 17, 2013 letter, counsel for Mascaro also stated that Mascaro had not agreed to the reduction in the worker's compensation lien. (*Id.*)

Mascaro receives any amount of the $1,560,701.38 workers' compensation lien. Finally, in

Count III, NY Marine asserts a claim for contractual bad faith.

 Both NY Marine and Mascaro move for judgment on the pleadings and, naturally, they

oppose each other's motions. To reiterate, NY Marine claims it is entitled to the entire

$1,560,701.38 workers' compensation lien while Mascaro requests this Court declare that under

the Policy and the PWCA it is entitled to $634,482 of the workers' compensation lien without

any obligation to pay any portion of it to the insurer.

## II. LEGAL STANDARD

 Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment

on the pleadings "[a]fter the pleadings are closed but within such time as not to delay trial. . . ."

Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law." *See Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir.1988)

(citation omitted). As with a motion to dismiss under Rule 12(b)(6), the "Court 'view[s] the facts

alleged in the pleadings and the inferences to be drawn from those facts in the light most

favorable to the [nonmoving party].'" *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251,

253 (3d Cir. 2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).

## III. DISCUSSION

### A. General Contract Interpretation Principles

 Under Pennsylvania law, "[t]he fundamental rule in interpreting the meaning of a

contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v.*

*Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (Pa. 2001) (citing *Felte v.*

*White*, 451 Pa. 137, 302 A.2d 347, 351 (Pa.1973)). "When the terms of a contract are clear and

unambiguous, then intent of the parties is to be ascertained from the document itself.*" Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 905 A.2d 462, 481 (Pa. 2006). "The issue of whether contractual language is ambiguous is a question of law." *Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, No. 09-6055, 2010 WL 1659760, *3 (E.D. Pa. Apr. 23, 2010) (citing *Trombetta v. Raymond James Fin. Servs., Inc.*, 907 A.2d 550, 561 (Pa. Super. Ct. 2006)).

Where the written terms of a contract can be read only one way and, thus, are not ambiguous, the court will interpret the contract as a matter of law. *Hullett v. Towers, Perrin, Forster & Crosby*, 38 F.3d 107, 111 (3d Cir.1994). A contract is not rendered ambiguous simply because the parties disagree on its interpretation. *State Farm Fire & Cas. Co. v. MacDonald*, 850 A.2d 707, 710 (Pa. Super. Ct. 2004). Rather, a contract is ambiguous only when "it is susceptible of two reasonable alternative interpretations." *Hullet*, 38 F.3d at 111.

### B. The Unambiguous Policy

The parties do not contest the validity of the Policy. The parties, however, dispute the interpretation of section L of the Policy as to its required distribution of the $1,560,701.38 workers' compensation lien and the impact of the PWCA on the Policy.

NY Marine's interpretation of the Policy is simple, and as will be discussed, correct as a matter of law. As detailed above, section L states "The recovered amounts remaining, after deducting the Company's recovery expenses, will *first be used to reduce the Company's loss*. Then the Company will pay the balance, if any, to the Insured." (Compl., Ex. A at 8) (emphasis added.) NY Marine asserts and the Court agrees, that section L of the Policy unambiguously states that NY Marine must recoup its loss first—the approximately $2.1 million paid out to

Mascaro—and then, if any excess over NY Marine's outlay remains, it goes to the insured, Mascaro.

Further supporting this interpretation of section L of the Policy, is the language contained in section B, which states "The Insured must retain loss [of $1,000,000]." (*Id.* at 6.) If Mascaro recovers any amount of the workers' compensation lien before NY Marine is fully reimbursed for its loss, section B would be violated because Mascaro would not have satisfied its retained loss requirement of $1 million which has to be absorbed before triggering the excess coverage.[5]

In its briefing, Mascaro relies on language from § 671 of the PWCA and its own interpretation of the Policy. Mascaro asserts that, based on § 671, NY Marine is not entitled to recoup its entire loss before Mascaro recoups its loss. Section 671 of the PWCA states:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe . . . against such third party to the extent of the compensation payable under this article by the employer; [reduced by] reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery.

77 P.S. § 671.

---

[5]    Mascaro argues that section B of the Policy does not require Mascaro to continue to have a loss of $1 million. Instead, Mascaro argues that if it receives payment from the lien so that its loss for Mr. Chisolm's claim will be less than $1 million, NY Marine will no longer have a duty to reimburse Mascaro for Mr. Chisolm's workers' compensation until Mascaro reaches the $1 million limit again. As NY Marine points out, and the Court agrees, the normal definition of the word *retain* is "to hold or continue to hold in possession or use: continue to have, use, recognize, or accept: maintain in one's keeping." *Retain Definition*, Merriam-Webster Unabridged Dictionary, http://unabridged.merriam-webster.com/unabridged/retain (last visited Nov. 30, 2013.) *See Madison Cont. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 608, 735 A.2d 100, 108 (1999) ("Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and [we] may inform our understanding of these terms by considering their dictionary definitions." (citations omitted)). Accordingly, section B unambiguously requires Mascaro to continue to have a loss of $1 million, rather than a loss that fluctuates below and up to $1 million.

Relying on this statutory language, Mascaro essentially contends that, pursuant to § 671, as an employer and self-insured, Mascaro has an absolute independent subrogation right against the settlement for the $1 million compensation paid to Mr. Chisolm, and NY Marine has a separate absolute subrogation right from the Policy for the $2.1 million paid to Mascaro.

After concluding that it has a separate right to the lien from §671 of the PWCA, Mascaro attempts to detail in its briefing NY Marine's and Mascaro's separate and distinct rights to the distribution of the workers' compensation lien. Mascaro's interpretation of §671 along with the Policy is that NY Marine is entitled to its indemnity—approximately $2.1 million—minus its proportional share of the recovery expenses under the PWCA, and Mascaro is entitled to the $1 million it paid Mr. Chisolm, minus its proportional share of the recovery expenses under the PWCA. Additionally, Mascaro contends that NY Marine further reduced the amount it is entitled to recover under the Policy when NY Marine unilaterally agreed with the underlying litigants to reduce the amount of recovery by $372,774.[6] Accordingly, Mascaro asserts that NY Marine is entitled to approximately $800,000 of the worker's compensation lien and Mascaro is entitled to approximately $634,000 of the lien.

The PWCA does not support Mascaro's argument about the distribution of the lien or its interpretation of the Policy.  The PWCA does not solely give Mascaro a right to the indemnity distribution. While the PWCA does state, "the employer shall be subrogated to the right of the employe," 77 Pa. Stat. Ann. § 671, the term employer encompasses an insurer to the extent that

---

[6]     Mascaro originally asserted that NY Marine reduced the worker's compensation lien by $500,000, while NY Marine maintained that the lien was reduced by $372,774. In a letter to the Court sent after this discrepancy was aired, Mascaro agreed that the $372,774 is the appropriate amount to use for the purposes of the motions on the pleadings. (Letter from Albert A. DeGennaro, Counsel for Plaintiff, Oct. 17, 2013.)

the insurer has assumed the employer's liability to a workers' compensation claimant. *See* 77 Pa. Stat. Ann. § 701. Accordingly, the PWCA simply explains that NY Marine has a right to subrogation for the employee's third party recovery up to the amount it paid for the workers' compensation claims and Mascaro has a right to subrogation in the amount it paid without being reimbursed to Mr. Chisolm. *See Gillette v. Wurst*, 594 Pa. 544, 937 A.2d 430 (2007) (stating that insurer had the right to subrogation of the third party's recovery under the PWCA); *Schramm v. Sanitation Authority*, 131 Pa. Commw. 126, 569, A.2d 994 (Pa. Commw. 1990) (citing to 77 P.S. § 701 and explaining that the insurer is entitled to subrogation for third party recovery when it contributes workers' compensation payments.)[7] Therefore, as § 671 of the PWCA is irrelevant to the interpretation of the Policy, Mascaro's extensive discussion and argument regarding the statute is not determinative.

Because the PWCA is irrelevant to the interpretation of the Policy, the Court only looks to the language of the Policy to evaluate Mascaro's interpretation of the Policy. As explained above, Mascaro's argument is that the Policy requires apportioning the amount of the attorneys' fees and costs from Mr. Chisolm's settlement between NY Marine and Mascaro, and then taking the separate apportioned expenses and subtracting those amounts from each parties indemnity

---

[7]      Mascaro argues that *Gillette* and *Schramm* are not applicable to this case because in those cases the insurance company, on behalf of the employer, actually paid the workers' compensation claims, whereas in this case NY Marine made its payments to Mascaro, and Mascaro paid the claim. Mascaro cites to no authority to show that this sequence difference is relevant to the actual issue at hand. As Mascaro cannot establish why the method of payment via the sequence of payees by NY Marine is relevant, the Court concludes that NY Marine also has the right to subrogation under the PWCA for the amount it paid to Mascaro on account of the Chisolm claim.

amount.[8] However, there is no language in the Policy that supports Mascaro's argument that the expenses need to be apportioned between the parties, and that, accordingly, NY Marine is only entitled to recoup its indemnity minus its proportion of the recovery expenses.[9] As explained previously, section L of the Policy states that recovery must first go reduce NY Marine's loss before Mascaro is entitled to compensation. NY Marine's loss is approximately the $2.1 million it paid to Mascaro. This language, in conjunction with section B, which requires Mascaro to retain a loss of $1 million, clearly establishes that that the unambiguous language of the Policy requires that NY Marine recoup its $2.1 million loss prior to Mascaro receiving any reimbursement monies.

Finally, NY Marine's and the Court's interpretation of the Policy is supported by judicially acknowledged industry practice for excess insurers. As the Eighth Circuit Court of Appeals explained, "excess [insurance] carriers are the last insurers obligated to pay claims and the first insurers entitled to recover in subrogation." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat. Union Ins. Co. Of Pittsburgh*, 621 F.3d 697, 719 (8th Cir. 2010).[10] Accordingly, the language of

---

[8]   Mascaro also claims that NY Marine unilaterally agreed to reduce the amount of the total workers' compensation lien to enable Mr. Chisolm to maintain a larger settlement amount. Accordingly, Mascaro argues that by unilaterally reducing the workers' compensation lien, NY Marine reduced the amount of recovery it is entitle to recoup as its loss. This is an issue that will be discussed later in this Memorandum.

[9]   Mascaro's interpretation relies on its argument that the Policy states that NY Marine is entitled to recover its indemnity minus its recovery expenses. (Opp. to Mot. on the Pleadings, 8.) However, there is no language in the Policy that limits NY Marine's recovery to its indemnity minus its recovery expenses. As detailed above, the language of the Policy states, "The recovered amounts remaining, after deducting the Company's recovery expenses, will first be used to reduce the Company's loss. Then the Company will pay the balance, if any, to the Insured."(Compl., Ex. A at 8.)

[10]   Mascaro's argument that the Policy is not excess insurance because Mascaro is not an insurance company is unavailing. "It is well recognized that self-insurance retentions are the

the Policy and the industry practice for excess insurers, supports the Court's conclusion that pursuant to the Policy NY Marine is entitled to recoup its $2.1 million loss before Mascaro recovers its loss. However, as explained above, Mascaro has alleged that NY Marine unilaterally agreed to reduce the workers' compensation lien. Accordingly, if Mascaro's allegation is true, which the Court must assume for the purposes of a motion on the pleadings, NY Marine's compromise with Mr. Chisolm effectively reduces the amount of loss NY Marine is entitled to receive under the Policy. Therefore, the Court must analyze whether NY Marine is entitled to the entire amount of the workers' compensation lien, or if a question of fact remains because of Mascaro's allegation regarding the unilateral agreement to reduce the lien.

### C. NY Marine's Alleged Comprised Recovery

As an initial observation, the Court notes that assuming that NY Marine unilaterally agreed to reduce its loss by the alleged $372,774, the amount of the reduced loss is still greater than the $1,560,701.38 workers' compensation lien, and, accordingly, as a matter of law, NY Marine is entitled to the entire lien currently held in escrow. The Court has provided a chart to explain the calculation of NY Marine's loss, assuming NY Marine unilaterally agreed to reduce its loss to provide Mr. Chisolm with a larger recovery.

| | |
|---|---|
| Amount of Loss | $2,069,078.00 |
| Amount of Comprise to Reduce the Workers' Compensation Lien | ($372,774.21) |
| Amount of Compromised Loss | $1,696,303.79 |

equivalent to primary liability insurance and that policies which are subject to self-insured retentions are 'excess policies. . . .'" *Pacific Employers Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276-77 (9th Cir. 1998).

As detailed in the above chart, NY Marine's total payment to Mascaro for Mr. Chisolm's workers' compensation claims is $2,069,078.00.[11] According to Mascaro, NY Marine unilaterally agreed to reduce their loss by $372,774.21. Thus, after reducing $372,774.21 from NY Marine's loss of $2,069,078.00, the comprised loss amount is $1,696,303.79. As stated above, the amount of the workers' compensation lien that was placed in escrow is $1,560,701.38. Therefore, even assuming that NY Marine unilaterally agreed to reduce its loss as Mascaro asserts, the comprised loss amount is still greater than the amount of the lien: $1,696,303.79 in loss compared to $1,560,701.38 of the lien. Accordingly, because NY Marine's loss is greater than the workers' compensation lien put into escrow, NY Marine is entitled to the entire amount of the lien that remains in escrow. NY Marine's Motion on the Pleadings with regard to its request for declaratory judgment contained in its Counterclaims is granted.

---

[11] Although NY Marine alleges it has paid out more than $2.1 million, the Court must use Mascaro's factual assertion about the amount in question because it is the nonmoving party.

11

IV.    CONCLUSION

For the foregoing reasons, the Court will grant NY Marine's Motion on the Pleadings as to Count I. However, NY Marine's Motion on the Pleadings as to Counts II and III will be denied.[12] Mascaro's Motion on the Pleadings will be denied it its entirety. An appropriate order follows.

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[12]    Originally, it was unclear if NY Marine's Motion on the Pleadings included its claim for bad faith contained in count III of its Counterclaims, as the issue of bad faith was not briefed by NY Marine. At oral argument, NY Marine clarified that it was requesting judgment on the pleadings for its bad faith claim. (Oral Argument at 11:18–12:3 (E.D. Pa. Sept. 27, 2013.)) However, because NY Marine did not adequately brief its bad faith claim in its Motion on the Pleadings, and because the Court concludes there are factual issues that make it inappropriate to grant NY Marine's claim for bad faith at this time, the Court will deny NY Marine's Motion as to count III.

Additionally, as detailed above, count II of NY Marine's Counterclaims requests this Court order Mascaro to reimburse NY Marine for all amounts that NY Marine paid under the Policy if Mascaro receives any amount of the workers' compensation lien. However, because the Court concludes that NY Marine is entitled to the entire $1,560,701.38 workers' compensation lien, count II is moot. Therefore, NY Marine's Motion on the Pleadings as to count II will be denied on mootness grounds.